h GAUDIN, Judge.
Two distinct appeals are involved in this .litigation. One is an appeal by Graeie Jean-sonne from a judgment dismissing her tort claims for negligent infliction of emotional distress; the other appeal is by Hartford Casualty and Surety company and Twin City Fire Insurance Company from a judgment ordering them to pay one-half of the costs of defending the lawsuit filed by Jeansonne.
Aetna Casualty and Surety Company actually defended, and it (Aetna) seeks an increase in attorney fees awarded to it for representing, at trial and on appeal, the named defendants, Michael Quinn et als.
For the following reasons, we (1) affirm the judgment dismissing the original petitions, (2) affirm the judgment ordering Hartford-Twin City to pay one-half of the defense costs and (3) increase the amount awarded to Aetna from $15,770.00 to $17,-770.00, with legal interest from date of judicial demand.
The major thrust of Jeansonne’s appeal is that the trial judge committed manifest error in permitting defense counsel to cross-examine ^plaintiff’s doctors about her (Jean-sonne’s) physical conditions and related medications which were not relevant to her subsequent mental breakdown.
Jeansonne, joined in this litigation by her husband Cleveland Jeansonne, was employed in Houma, Louisiana as a bookkeeper by a newspaper, L’Observateur. She alleged that her two supervisors, Quinn and Joseph Lucia, caused her “severe mental injuries”, particularly on June 16, 1992 following the loss (theft) of a bag of money. Lucia, according to Jeansonne, used loud and profane language and threw things at her. She began *1102 to have chest pains, she said, and couldn’t breathe.
Prior to this incident, Jeansonne testified, her duties as company bookkeeper required her to report some of Lucia’s improper expenses. She said that Lucia made personal long distance calls on the office telephone, used the L’Observateur mail meter for personal mail, etc. After she reported these and other improprieties, she stated, Lucia would stand in the doorway or at her desk and stare at her. Jeansonne said she was intimidated.
Lucia testified that he was upset when the bag of money was missing. He said he used the words “damn” and “hell” and that he was “rough” searching for the bag. He denied, however, that he threw anything at Jean-sonne.
Further, Lucia testified that on the day in question he told Jeansonne that another newspaper employee, Sheila Barrilleaux, had told him (Lucia) that she had placed the bag on Jeansonne’s desk. Jeansonne, Lucia said, then started shouting and calling Barrilleaux a thief. Lucia recalled, that he told Jean-sonne to keep quiet or they could be sued.
Lucia and Quinn said that they had never done anything to intentionally hurt Jean-sonne. In fact, Lucia said, he had recommended Jeansonne for a salary increase in April of 1992.
| ⅞Quinn stated that sometime after June 6, 1992 he was required to terminate Jean-sonne’s employment because some of the bookkeeping was being transferred to the newspaper’s home office in Bogalusa, Louisiana. Mainly, Quinn explained, Jeansonne’s job was being eliminated.
In written “Jury Interrogations” submitted to them, the jurors were asked:
(1) Do you find that Joseph Lucia negligently inflicted distress on Gracie Jeansonne on June 16,1992?
(5) Do you find that Joseph Lucia intentionally inflicted emotional distress on Gracie Jeansonne on June 16, 1992.
(7) Do you find that Michael Quinn negligently inflicted emotional distress on Gracie Jeansonne in his discussion with her concerning the Donna Spa-doni and Shelia Barrilleaux altercation?
(11) Do you find that Michael Quinn intentionally inflicted emotional distress on Gracie Jeansonne in his discussion with her concerning the Donna Spa-doni and Sheila Barrileaux altercation?
The answer to all four questions was “No.” It appears, from the record, that there was a sufficient basis for these factual findings. Jeansonne’s primary argument now is that these finding went against her because the trial judge wrongly allowed sweeping, irrelevant cross-examinations of her medical witnesses, Drs. Lawrence McManus and Robert Davis.
Dr. McManus, a family physician, treated Jeansonne for a considerable number of physical and emotional complaints from May of 1976 to October, |⅜1993. The cross-examination of this witness was lengthy and did reveal that Jeansonne had a variety of ills. She was treated for depression, stress, stomach problems, arthritis, gastritis, nausea, headaches and chest pains. She was prescribed quite a few drugs to help her deal with afflictions. Jeansonne’s counsel wanted the cross-examination restricted to Jean-sonne’s mental ailments and the medications related to them. He objected several times when the cross-examination focused on physical illnesses and the medications prescribed for them. The objections were overruled.
In Louisiana, generally, a wide latitude is permitted on cross-examination. When a witness testifies as to any single fact in his direct examination, he may be cross-examined on matters not brought up on direct. The trial judge determines what is and what is not relevant and his rulings are not disturbed on appeal in the absence of a clear showing of an abuse of this broad discretion.
Here, there was no clear abuse. Almost all of the cross-examination was about Dr. McManus’ treatment and medications prescribed by him.
The same holds true regarding the cross-examination of Dr. Davis, a psychiatrist who has been seeing Jeansonne off and on since *1103 October, 1992 when she was admitted to a hospital emergency room because family members thought she was suicidal. The trial judge found the cross-examination within reasonable bounds and we cannot say his vast discretion was abused.
Turning now to Hartford-Twin City’s contention that Aetna alone should bear defense costs, we note, initially, that Aetna (as Hartford-Twin City did later) asserted specific policy exclusions in defense of the main demand yet went ahead and defended Wick Communications and the other frnamed defendants. Aetna argues that Hartford and Twin City were also required to defend against Jeansonne’s claims. The trial judge agreed with Aetna, which had filed third party demands against the other insurance companies. The trial judge decreed that although there were employee exclusions in the Hartford-Twin City policies, these companies were nonetheless required to defend along with Aetna. Hartford had issued an umbrella policy while Twin City had in effect a commercial general liability policy. The named insureds were Wick Publishing Company, d/b/a L’Observateur. Jeansonne alleged that she was employed by Wick Publishing Company or Wick Communications.
An insurer’s obligation to defend is determined by the petitioner’s allegations and is broader than its exposure for liability claims. A plaintiffs contentions are liberally interpreted. In instances where coverage is questionable, the insurer must defend regardless of the outcome of the litigation.
Here, the trial judge awarded $15,770.00 to Aetna. This amount is increased by $2,000.00 for attorney fees incurred by Aetna in this appeal.
AFFIRMED AS AMENDED.